**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JAMES A. POUNDERS,

       Plaintiff,

v.                                    CIV 17-0465 KBM

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

       Defendant.


# <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 18*), filed on October 30, 2017. The Court further ordered supplemental briefing on two discrete issues on May 16, 2018. *See Doc. 24*. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 10*, *12*, *23*. Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is well-taken and will be granted.

## I.    Procedural History

This is Mr. Pounders' (Plaintiff's) second appeal of an application he protectively filed with the Social Security Administration on April 8, 2010, for a period of disability and Disability Insurance Benefits (DIB) under Title II of the Social Security Act.

Administrative Record[1] (AR) at 83. Plaintiff alleged a disability onset date of July 1, 2009. *See* AR at 84.

Disability Determination Services determined that Plaintiff was not disabled both initially (AR at 83) and on reconsideration (AR at 85). Plaintiff requested a hearing with an Administrative Law Judge (ALJ) on the merits of his application. AR at 97. Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 37-82. ALJ Ann Farris issued an unfavorable decision on June 29, 2012. AR at 21-36. Plaintiff then submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 16), which the council denied on February 6, 2014 (AR at 2-8). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

Plaintiff first appealed ALJ Farris's decision to this Court on April 11, 2014. *See Pounders v. Colvin*, CV 14-0347 KG/WPL, Compl. (D.N.M. Apr. 11, 2014). Days later, Plaintiff filed a second application for a period of disability and DIB (AR at 742-48), and the state agency issued a favorable determination on February 6, 2015, finding Plaintiff was disabled beginning January 1, 2014.[2] AR at 628-40. Subsequently, on July 14, 2015, Magistrate Judge William P. Lynch filed Proposed Findings and a Recommended Disposition ("PF&RD"), recommending that Plaintiff's Motion to Remand regarding his first application be granted on the basis that, (1) ALJ Farris failed to discuss the relevant

---

[1] Documents 15-1 through 15-14 comprise the sealed Administrative Record. *See Doc. 15.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

[2] The state agency found that Plaintiff, an individual who was closely approaching advanced age, would be limited to unskilled, sedentary work, which meant that he was disabled under the medical-vocational guidelines ("grids"). *See* AR at 628, 638; 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.14.

factors in weighing a treating physician's opinion; and (2) ALJ Farris failed "to assess [Plaintiff's] work-related abilities on a function-by-function basis" in determining his residual functional capacity. *See Pounders*, 14-0347 KG/WPL, PF&RD at 11-13 (D.N.M. July 14, 2015). United States District Judge Kenneth Gonzales adopted the PF&RD and remanded the matter for further proceedings. *See Pounders*, 14-0347 KG/WPL, Order Adopting Magistrate Judge's PF&RD (D.N.M. Aug. 24, 2015).

On April 5, 2016, the Appeals Council affirmed the state agency's determination on the second application that Plaintiff "was disabled beginning January 1, 2014." AR at 601-02. The council found, however, that "the period prior to January 1, 2014 require[d] further administrative proceedings" and remanded the matter to an ALJ to "issue a new decision on the issue of disability before January 1, 2014." AR at 601-02.

Following remand by Judge Gonzales of this Court, ALJ Farris held a second *de novo* hearing regarding Plaintiff's first application on September 1, 2016. AR at 514-47. The ALJ issued a partially favorable decision on December 30, 2016. AR at 486-513. Using the five-step sequential evaluation process, ALJ Farris found that Plaintiff was disabled beginning on July 1, 2013, through December 31, 2013. AR at 486-513. There is no evidence that Plaintiff asked the Appeals Council to review ALJ Farris's decision, so the ALJ's decision became the final decision of the Commissioner 60 days after December 30, 2016. Plaintiff then filed a suit in this Court seeking remand for another rehearing. *Doc. 1*.

## II.    Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a sequential evaluation process ("SEP") to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), he is unable to perform his past relevant work. 20 C.F.R §§ 404.1520(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of [his] medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

At Step One of the process,[3] ALJ Farris found that Plaintiff "has not engaged in substantial gainful activity from January 1, 2009, through December 13, 2013." AR at 493 (citing 20 C.F.R. §§ 404.1571-1576).

At Step Two, the ALJ concluded that since January 1, 2009, Plaintiff "has had the following severe impairments: degenerative disc disease of the lumbar and cervical spine, status-post lumbar fusion L4-S1, moderate arthrosis of the synovial joints, and obesity. Beginning on the established onset date of disability, July 1, 2013," Plaintiff had the aforementioned severe impairments, as well as "arthritis of the hands." AR at 494 (citing 20 C.F.R. § 404.1520(c)). ALJ Farris also noted the following nonsevere impairments: sleep apnea; mesenteric fibrosis; depression; and degenerative joint disease of the knees, shoulders, and hands (the ALJ found, however, that the degenerative joint disease of the hands became severe as of July 1, 2013). AR at 494.

At Step Three, the ALJ found that for the relevant time period, Plaintiff "has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 497 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). At Step Four, the ALJ considered the evidence of record and found

> that prior to July 1, 2013, the date [Plaintiff] became disabled, [he] had the [RFC] to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except [Plaintiff] was limited to occasional climbing of ramps and stairs, balancing, and stooping. He could never climb ladders, ropes, and scaffolds, kneel, crouch, or crawl. He was limited to frequent reaching. He must avoid hazardous condition [sic], such as unprotected heights and dangerous moving machinery.

AR at 497-98. For the time period

---

[3] ALJ Farris first found that Plaintiff "has acquired sufficient quarters of coverage to remain insured through December 31, 2014. Thus, [Plaintiff] must establish disability on or before that date in order to be entitled to a period of disability and [DIB]." AR at 491-92.

> beginning on July 1, 2013, through December 31, 2013, [Plaintiff] has the [RFC] to perform sedentary work as defined in 20 [C.F.R. §] 404.1567(a) except [Plaintiff] can occasionally climb ramps and stairs, balance, and stoop. He cannot climb ladders, ropes, and scaffolds, kneel, crouch, or crawl. He can frequently reach. He must avoid hazardous condition [sic], such as unprotected heights and dangerous moving machinery. He can occasionally handle and finger.

AR at 503-04.

The ALJ determined that from "July 1, 2009, through December 31, 2013, [Plaintiff] has been unable to perform any past relevant work." AR at 504 (citing 20 C.F.R. § 404.1565). ALJ Farris found that "[p]rior to July 1, 2013, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled' whether or not [he] has transferable job skills. Beginning on July 1, 2013, [Plaintiff] has not been able to transfer job skills to other occupations." AR at 505 (citing SSR 82-41, 1982 WL 31389 (Jan. 1, 1982); 20 C.F.R. Part 404, Subpart. P, App'x 2). Before July 1, 2013, "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed"; specifically, Plaintiff would have been able to perform the jobs of Marker, Cashier II, and Cafeteria Attendant. AR at 505-06 (citing 20 C.F.R. §§ 404.1569, 404.1569a). "Beginning on July 1, 2013, through December 31, 2013, . . . there were no jobs that existed in significant numbers in the national economy that [Plaintiff] could perform." AR at 506 (citing 20 C.F.R. §§ 404.1560(c), 404.1566). Ultimately, ALJ Farris found that Plaintiff "was not disabled prior to July 1, 2013, but became disabled on that date and has continued to be disabled through December 31, 2013." AR at 506 (citing 20 C.F.R. § 404.1520(g)).

### III. Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

Moreover, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

**IV.    Discussion**

Plaintiff contends that the case must be remanded because ALJ Farris failed to apply SSR 83-20 when determining Plaintiff's disability onset date. *Doc. 18* at 15-21; *see also* SSR 83-20, 1983 WL 31249 (Jan. 1, 1983). As an alternative argument, Plaintiff contends that the ALJ inadequately assessed his RFC. *Doc. 18* at 21-23. Because the Court agrees that the ALJ erred in failing to apply SSR 83-20 to determine the disability onset date, it will grant Plaintiff's motion on that issue.

**A.    There is no error in ALJ Farris's application of the SEP.**

The Court pauses here to reexamine the procedural history of this case, which is somewhat complicated by the fact that Plaintiff filed two separate applications for DIB. *See Jaramillo v. Colvin*, 184 F. Supp. 3d 1086, 1089-90 (D.N.M. 2015). It was only after the state agency found Plaintiff disabled as of January 1, 2014, on his *second* application, that the district court remanded his *first* application back for a rehearing and further analysis. When ALJ Farris received the file on Plaintiff's first application for the second time, she was charged with determining whether Plaintiff was disabled during the time period that remained at issue between the two applications—that is, the time between Plaintiff's alleged onset date (January 1, 2009), and the day before the state agency found Plaintiff disabled (December 31, 2013). Accordingly, ALJ Farris was correct to use the SEP to evaluate Plaintiff's first application and to determine whether Plaintiff was disabled during the relevant time period. *See Jaramillo*, 184 F. Supp. 3d at 1092-93.

Plaintiff muddied the waters on this issue in his motion to remand. Plaintiff first asserted that "for the period between January 1, 2009 and December 31, 2013, ALJ

Farris **erroneously applied the five-step sequential evaluation process**, which has been established for evaluating whether a claimant is disabled, rather than for determining the onset date of disability." *Doc. 18* at 16 (emphasis added) (citing *Trujillo v. Astrue*, Civ. No. 10-0885 JCH/KBM, Proposed Findings & Recommended Disposition, at *6 (June 20, 2011 D.N.M. 2011) ("*Trujillo PF&RD*"). Yet the SEP is exactly what ALJ Farris needed to assess. It was only *after* ALJ Farris found Plaintiff was disabled during the relevant time period that SSR 83-20 came into play. *See Hill v. Astrue*, 289 F. App'x 289, 294 (10th Cir. 2008) (noting that where "the ALJ never made a finding that [the plaintiff] eventually became disabled," there could be no "ambiguous 'onset date' which required clarification" pursuant to SSR 83-20); *see also* SSR 83-20, 1983 WL 31249.

Plaintiff's attorney, Mr. Michael Armstrong, made an almost identical statement and relied on identical language from *Trujillo*[4] in at least two earlier cases. *See Ortega*

---

[4]  In *Trujillo*, the plaintiff filed a single application for DIB, and the Commissioner approved benefits for the plaintiff as of July 1998. *See Trujillo PF&RD*, at *1. In order to be eligible for any benefits, however, the plaintiff was required to establish that he was disabled on or before his date last insured—December 31, 1987. *Id.* at *4. Plaintiff's application was heard by two different ALJs and was appealed twice to the federal court. *See id.* at *4-6. The second ALJ found that the plaintiff "was not under a disability . . . from December 31, 1982 through the date last insured." *Id.* at *6. Because the Commissioner had found Plaintiff disabled as of July 1998, due to a "slowly progressive impairment" (multiple sclerosis), and because there was insufficient evidence to make a reasonable inference regarding the onset date, the court remanded and instructed the ALJ to determine the onset date pursuant to SSR 83-20. *See id.* at *6-7; *see also Trujillo*, No. 10-0885, Order Adopting Magistrate Judge's PF&RD (July 20, 2011 D.N.M.).

To the extent *Trujillo* stands for the proposition that an ALJ should consult with a medical advisor to help establish an onset date where there is ambiguous evidence of the onset of a nontraumatic impairment, the case is on point. *Trujillo* is obviously distinguishable, though, as there was only one application and the ALJ, who was bound by the Commissioner's earlier determination of disability, simply needed to determine the plaintiff's disability onset date pursuant to SSR 83-20. Here, ALJ Farris was not bound by the Commissioner's finding of disability, as the ALJ was looking at Plaintiff's first application, and the Commissioner's finding was restricted to his second application. *See* POMS GN 03106.090, New Disability Applications, https://secure.ssa.gov/poms.nsf/lnx/0203106090.

*v. Colvin*, No. CV 15-0688, Mot. to Reverse or Remand for Rehearing, with Supporting Mem., at *14 (D.N.M. May 5, 2016) (ALJ Farris "erroneously proceeded to apply the five-step sequential evaluation process, rather than determine the onset date of his disability") (citing *Trujillo PF&RD*, at *6); *Jaramillo v. Colvin*, Civ. No. 14-0298 SMV, Mot. to Reverse & Remand for a Rehearing with Supporting Mem., at *10 (D.N.M. Nov. 7, 2014) ("in her decision ALJ Rice failed to follow the controlling SSR 83-20 and erroneously proceeded to apply the five-step sequential evaluation process") (emphasis omitted) (citing *Trujillo PF&RD*, at *6). Judge Vidmar expressly disagreed with this reasoning in his *Jaramillo* decision.[5] *See Jaramillo*, 184 F. Supp. 3d at 1092-93. Due to the lack of clarity in Plaintiff's motion, and because the parties had not discussed either *Jaramillo* or *Ortega*, the Court ordered additional briefing on this issue. *See Doc. 24*.

Plaintiff clarified in his supplemental brief that he does *not* believe ALJ Farris erred in applying the SEP; rather, he contends ALJ Farris erred in failing "to consult a medical advisor to determine when his disability began rather than assigning a date without a concrete reason for picking that date." *Doc. 25* at 3. The Court encourages Plaintiff's counsel to lead with this much clearer (and legally correct) statement in future motions.

**B.    ALJ Farris erred in failing to apply SSR 83-20 to establish the onset date of Plaintiff's degenerative disc disease.**

The parties do not dispute whether Plaintiff is disabled under the Social Security Act; they disagree only on when his disability started. After applying the SEP and determining that Plaintiff was under a disability during the relevant time period, ALJ

---

[5] Judge Lynch adopted the *Jaramillo* rationale in *Ortega* and disapproved of Mr. Armstrong's use of the argument without alerting the court to Judge Vidmar's *Jaramillo* opinion. *See Ortega v. Colvin*, CV 15-688 WPL, 2016 WL 9774936 and 2016 WL 9776332, at *4-5 (D.N.M. Nov. 29, 2016).

Farris was required to "establish the onset date of disability." SSR 83-20, 1983 WL

31249, at *1.

> It is important to understand that the issue of whether a medical advisor is required under SSR 83-20 does not turn on whether the ALJ could reasonably have determined that [the claimant] was not disabled before [his] [last insured date]. Rather, when there is no contemporaneous medical documentation, we ask whether the evidence is ambiguous regarding the possibility that the onset of [his] disability occurred before the expiration of [his] insured status. If the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83–20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a "legitimate medical basis."

*Blea v. Barnhart*, 466 F.3d 903, 911 (10th Cir. 2006) (quoting *Grebenick v. Chater*, 121

F.3d 1193, 1200-01 (8th Cir. 1997) (internal citations omitted)).

Before delving into the issue of whether the medical evidence in this case was

ambiguous, it is important to recognize why ALJ Farris reduced Plaintiff's exertional

level from "light" (prior to July 1, 2013) to "sedentary" (on July 1, 2013). The

Commissioner, noting the ALJ's additional restriction on Plaintiff's ability to handle and

finger, asserts that the ALJ gave detailed findings regarding "the medical evidence [that]

showed worsening of his hands by late July 2013 . . . ." *Doc. 20* at 13. Yet the ALJ's

decision is also firmly based on the progression of Plaintiff's degenerative disc disease,

which she noted "likely reached a 'severe' degree at some point in late 2013 . . .

warrant[ing] further restriction to sedentary exertion . . . ." AR at 504. It is the medical

evidence of this second impairment that Plaintiff argues was ambiguous. And,

importantly, the Commissioner acknowledges that the ALJ's treatment of the "likely"

worsening of Plaintiff's degenerative disc disease was lacking. *Doc. 20* at 13 (noting

that Plaintiff "focuse[d] on the ALJ's one-paragraph discussion of his back").

The ALJ thoroughly summarized the 2011 record evidence of Plaintiff's degenerative disc disease. *See* AR 498-503, 504. What is striking to the Court, however, are the ALJ's observations regarding both inconsistencies in the evidence from 2011, and the almost complete lack of evidence from 2012 and early 2013. AR at 499-500. For example, ALJ Farris detailed the 2011 records and noted Plaintiff's "persistent back pain despite conservative medication management" (AR at 499 – citing AR at 309-10, 334), the "'early' degeneration of the L2-L3 disc, 'advanced' degeneration of the L5-S1 disc, a prior lumbar fusion, and moderate osteoarthrosis of the synovial joints" (AR at 499 – citing AR at 325, 334, 336; *see also* AR at 324, 335, 349), observations of "painful lumbar loading," and "painful ranges of motion in the lumbar spine, cervical spine, and hips, paraspinal tenderness, and decreased sensation in the lower extremities" (AR at 499 – citing AR at 399, 401, 406, 903). The ALJ noted that in early 2012, "[d]iagnostic imaging of the spine . . . confirmed a surgical fusion of L4 through S1 with 'slight' subluxation at L2-L3, lumbar endplate spurring at multiple levels, and 'mild' degenerative changes of the cervical spine with 'moderate' neural foraminal stenosis and 'mild' canal stenosis." AR at 499 (citing AR at 414, 922).

On the other hand, the ALJ observed that "***despite this evidence***, physical examinations generally revealed full motor functioning, bilaterally." AR at 499 (emphasis added) (citing AR at 316, 341). The ALJ also detailed several other medical records from 2011 that showed "no significant spinal stenosis or neural foraminal narrowing" (AR at 499 – citing AR at 351), *no evidence* of acute lumbosacral radiculopathy, just merely evidence of an 'old' L5 nerve root injury" (AR at 499 – citing AR at 337), and later in the year, an observation by Plaintiff's neurosurgeon of "'good' range of lumbar

motion and 'normal' neurological findings" (AR at 500 – citing AR at 397). The ALJ's use

of the phrase "despite this evidence" acknowledges the conflicting, ambiguous medical

evidence regarding Plaintiff's degenerative disc disease in 2011 and early 2012. The

ALJ also remarked that Plaintiff "stopped consulting with his neurosurgeon in 2012 and

did not resume until 2014." AR at 500. Consequently, there are very few medical

records for this time period.

> The ALJ found that

> by February 2014, imaging confirmed 'severe' stenosis at L3-L4. Accordingly, [the ALJ took] administrative notice that degenerative diseases **progress over time**, and that [Plaintiff's] disease at the L3-L4 level **likely** reached a 'severe' degree **at some point** in late 2013, as opposed to the 'moderate' degree from prior imaging in 2012 . . . .

AR at 504 (emphasis added) (citing AR at 872). Plaintiff's degenerative disc disease

that "progress[es] over time" is precisely the type of "slowly progressive impairment" that

SSR 83-20 is designed to address. *See* SSR 83-20, 1983 WL 31249, at *2. "With slowly

progressive impairments, it is sometimes impossible to obtain medical evidence

establishing the precise date an impairment became disabling." *Id.* Where the "medical

evidence does not establish the precise onset date, the ALJ may have to 'infer the onset

date from the medical and other evidence that describe the history and symptomatology

of the disease process.'" *Blea*, 466 F.3d at 909 (quoting SSR 83-20, available at 1983

WL 31249, at *2).

Plaintiff asserts that the medical evidence was insufficient to provide "the precise

date [Plaintiff's] impairment became disabling." *Doc. 18* at 18 (quoting SSR 83-20, at

*2). The Commissioner contends that the evidence was adequate for ALJ Farris to

establish the onset date without calling a medical advisor. *Doc. 20* at 13 (citing SSR 83-

20, 1983 WL 31249, at *3). But as discussed above, the medical evidence on Plaintiff's degenerative disc disease was ambiguous in 2011, and scant in 2012-13, which was a critical time period in determining the onset of the disability.  The Tenth Circuit has explicitly held that "[a]n ALJ may not make negative inferences from an ambiguous record; rather, [she] must call a medical advisor pursuant to SSR 83-20." *Blea*, 466 F.3d at 913 (citing *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995)). Moreover, "when an onset date is ambiguous, it is not usually possible for an ALJ to make a decision that is supported by substantial evidence." *Id.* at 911.

ALJ Farris guessed that Plaintiff's impairment "likely reached" a disabling degree "at some point" in 2013. The ALJ's guess, without specific medical evidence, is inadequate. It is clear to the Court that the ALJ had to infer the onset date of Plaintiff's disability. And as described above, the evidence was scant and ambiguous regarding the progression of Plaintiff's slowly progressive impairment. Thus, the ALJ erred in failing to call a medical advisor to help establish an onset date, and the Court will remand for further proceedings that comply with SSR 83-20.

## V.     Conclusion

The Court finds that ALJ Farris erred in failing to call a medical advisor to establish the onset date of Plaintiff's degenerative disc disease as is required by SSR 83-20. On remand, the ALJ must call a medical advisor and comply with SSR 83-20. Because the Court grants Plaintiff's motion on this issue, the Court need not examine Plaintiff's alternative argument regarding whether the ALJ inadequately assessed his RFC.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 18*) is **granted**. The Court will enter a Final Order pursuant to Rule 58 of the Federal Rules of Civil Procedure remanding this matter to the Acting Commissioner for further proceedings consistent herewith.

_____

UNITED STATES MAGISTRATE JUDGE
Presiding by Consent